The second question has been before the courts in Barger a. Durvin (22 *Barb.*, 68), and Pickett a. King (34 *Ib.*, 193). In the former, Justice Emott, at special term, held that payment by an assignee was the act of assignor by his agent duly authorized, and was evidence of a new promise. In the other case, the court, at general term, disapproved of Justice Emott's decision, and held the other way. On this question, therefore, I am bound by the decision of the general term, however much I may doubt its correctness.

But upon the first question I have no doubt, and therefore dispose of this case upon that point alone. I hold that the assignment was a sufficient acknowledgment to take the case out of the statute, and that the action having been brought within six years after such acknowledgment, the plaintiff is entitled to recover the balance due on said note.

## TAACKS a. SCHMIDT.

*Supreme Court, First District; Special Term, November*, 1864.

ATTACHMENT.—LEVY.—LIEN OF DUTIES.—INJUNCTION.—DAMA-
GES ON DISSOLUTION.—CONFIRMATION OF REPORT.

Where the sheriff of the county in which a vessel was, directed the master to anchor and deliver to him certain goods then in bulk on board the vessel, de-

scribed in an attachment, and the master, to save delay, made himself a receiptor to the sheriff for the goods,—*Held*, that there was a good levy, though the hatches were not opened, and the sheriff did not see the goods until the arrival of the vessel at her wharf in another county.

The lien of the United States, on goods, for duties, and their possession for the purpose of collecting such duties, do not divest a levy upon the interest of the owner of the goods, subject to the duties.

A levy upon bills of lading is not a levy upon the goods, and an agreement by the consignees to hold such bills of lading, and the proceeds of the goods subject to such levy, will not render it effectual as against third parties.

A mere contract to sell, unaccompanied by payment, will not transfer the title of goods as against an attaching creditor.

A referee's report assessing damages at a sum to be ascertained by future proceedings in another cause, is premature, and the confirmation of such report should be deferred.

In the computation of the damages sustained by an injunction within the meaning of the usual undertaking, charges in the suit, and the fees and allowances of counsel should not be included, but the judgment in the suit may be declared to be damages.

Where an attachment had been issued in one suit, and the attached property had been taken by a third person under protection of an injunction which he had obtained in another suit, forbidding the plaintiff in the attachment from interfering with it, and the injunction-suit was subsequently dismissed :—*Held*, that the judgments in both suits were proper damages against the plaintiff in the injunction-suit.

In such cases where the damages on the injunction-bond were fixed by the referee at the amount which should be recovered in such another action, and such report was passed upon and modified by the court, but its confirmation suspended until the determination of such other action,—*Held*, that upon the happening of that event the report should be confirmed, and could only be reviewed on appeal. It could not be corrected on a motion to modify it.

The facts of this case are briefly as follows :

Theodor Schmidt having commenced an action against Schroeder & Co., issued to the sheriff of Richmond county an attachment against the property of the defendants, which was levied by him upon hides in bulk on board the barque Seneca at the quarantine. To prevent delay the master of the barque made himself receiptor for the goods, and the vessel proceeded, having the deputy sheriff on board, to her wharf in Brooklyn, where the hides were unloaded, separated from the rest of the cargo by the deputy sheriff, and taken by the custom-house officers to the United States bonded warehouse.

Prior to the levying of this attachment, two other attach-

ments had been issued to the sheriff of the city and county of New York, the first by Trovet & Sons, and the second by Theodore Schmidt, under which the sheriff of New York had attached the bills of lading for the hides.

Two or three hours before the levy by the sheriff of Richmond county on these goods, a contract had been made for the purchase of them from the defendants by William G. Taacks, the present plaintiff, and bought and sold notes were exchanged, but no money was then paid, nor any note given by Taacks for the goods. On the 4th of June, about two months after the levy, Taacks commenced the present action against Schmidt and the sheriff of Richmond county, Abraham Lockman, to enjoin them from interfering with the goods, and, the duties having been paid, the plaintiff took away the goods under the preliminary injunction which he had obtained in this action.

Subsequently, the complaint in this action was dismissed on the ground that it did not state facts sufficient to constitute a cause of action, but asked for an injunction to restrain a mere trespass; and a reference was directed to Hon. Lucien Birdseye (late a justice of the Supreme Court) to ascertain the defendant's damages. Meanwhile the suit first above-mentioned by Schmidt against Schroeder & Co. was still pending.

The importance of some of the questions determined, and the reference had by the court to the views of the learned referee, induce us to present his opinion here.

BIRDSEYE, *Referee.*—This action was brought to trial at special term on the 6th of February, 1862, and the complaint was dismissed, on the ground and objection, that the same did not state facts sufficient to constitute a cause of action, but asked for an injunction to restrain a mere trespass.

It was at the same time referred to me to ascertain the damages which the defendants had sustained by reason of the injunction granted or issued in the action, and report the same. The order contained a provision stating that the court did not pass upon the title to, or property in, the hides in question, nor decide that the defendants were entitled to any damages beyond nominal damages on account of the issuing of the injunction-order.

In the admissions signed by the parties which have been

placed before me, it is admitted by both parties, that on the 5th of June, 1858, the plaintiff by means of the injunction-order issued in this action, which was then served on the sheriff of Richmond county, who was thereby prevented from interfering with the property, took possession of said hides, and has since retained them or their proceeds in his possession.

The only question therefore for me to decide is, whether the defendant, Theodor Schmidt, by virtue of his attachment issued to the sheriff of Richmond county, or the sheriff under that attachment, had obtained a lien upon, or a special interest or property in the hides in question, prior to the service of the injunction-order. This question cannot be decided, without deciding what rights or interests had been acquired by the plaintiff by his alleged purchase of the hides in question from Trovet, Schroeder & Co., the consignees, or by Abraham Trovet & Sons under their attachments issued to the sheriff of the city and county of New York, and served on those consignees.

To the proper presentation and discussion of these various and conflicting claims, a careful statement of the facts, as nearly as may be in their chronological order, is essential.

Messrs E. Schroeder & Co., of Buenos Ayres, in January, 1858, shipped at that place forty-seven bales of goat-skins, and thirteen hundred and fifty-five dry hides, owned by them, on board the barque Seneca, consigned for sale on their account to Messrs. Trovet, Schroeder & Co., of New York. The bills of lading and invoices therefor were forwarded, and reached the hands of the consignees on the 8th of March, 1858. On the 17th of February, 1858, Trovet, Schroeder & Co., the consignees of the hides and skins, had in their possession money belonging to said E. Schoeder & Co. to the amount of $114.00. On that day a warrant of attachment was duly issued to the sheriff of the city and county of New York, in a suit brought by Abraham Trovet & Sons against said E. Schroeder & Co., of Buenos Ayres, as non-resident debtors, and on the same day the attachment and notice were duly served on Trovet, Schroeder & Co., attaching all funds and property which they might have belonging to said E. Schoeder & Co. That suit was for the recovery of $11,200.

On the 22d of February, 1858, the present defendant, Theo-

dor Schmidt, also commenced a suit in this court against said E. Schroeder & Co. as non-resident defendants for the sum of $4,444.44, and on the same day caused another warrant of attachment in that suit to be issued to the sheriff of New York, which was on the same day duly served on said Trovet, Schroeder & Co., with the proper notice for attaching the funds and property in their hands of said E. Schroeder & Co.

On the 9th of March, 1858, the consignees, Trovet, Schroeder & Co., having then received the invoice and bills of lading for the skins and hides, furnished to the sheriff of New York under said two attachments a certificate of the property of said E. Schroeder & Co. in their hands, in which they specified and included the bills of lading for the merchandise in question, by which certificate they agreed with the sheriff to hold said bills of lading on said merchandise to arrive, or the proceeds of the sales thereof, subject to the attachments, and to account to the sheriff for the proceeds thereof.

On the 3d of March, 1858, another attachment was duly issued in the said suit of Theodor Schmidt *a*. E. Schroeder & Co., and delivered to the present defendant, Abraham Lockman, then sheriff of Richmond county.

On the 10th of April, 1858, in the forenoon and about eleven o'clock, as all the proof tends to show, Messrs. Trovet, Schroeder & Co. negotiated a sale of the hides in question, thirteen hundred and fifty-five in number, to Taacks, the present plaintiff, at 25 cents per pound, upon a credit of six months, less five per cent. for cash, at buyer's option. The hides to be taken at invoice weight. The sale was effected through a broker who gave to each party the usual bought and sold notes, specifying the terms of the contracts of purchase and sale. But it distinctly appears that no money was advanced or paid by the purchaser at the time; nor did he then give any note or other obligation on the faith of the merchandise. Trovet, Schroder & Co. were then the agents and bankers of Taacks, and they had in their hands a large amount of money of Taacks, probably to the amount of the price of the hides.

There was some attempt on the hearing before me to cast suspicion on the good faith of this purchase by Taacks. But on a careful examination of the whole case I see no ground for any such doubt. None of the parties knew of the Richmond coun-

ty attachment. From the nature of the case, they could not. It would, if intended to gain a priority over the attachments issued to the sheriff of New York, be issued, if not secretly, certainly without unnecessary publicity. The consignees seem to have sold the goods for the account and benefit of their foreign principals, in the same manner as if the attachments had not been levied upon them, and for the purpose of holding the proceeds of the sale, subject to the attachments, in the same manner as the merchandise had been prior to the sale.

What right or power they had thus to dispose of the goods, if they were in fact reached and held by the attachments, acting as they confessedly did, without the order of the court, or the directions of the sheriff, it is not now necessary to inquire.

It is certainly no ground for suspicion that Taacks at the time of the sale neither paid nor gave any note or other obligation for the hides. For these had not then arrived in New York. They were not and could not be delivered. It was not positively known that they ever would arrive. A payment in advance for goods so purchased would have been grounds for suspecting the fairness and good faith of the transaction.

On this same day, the 10th of April, 1858, the barque Seneca arrived in the waters of the port of New York. In coming to the city of New York she came to the quarantine station, within the county of Richmond. The testimony of Regan, the deputy sheriff, shows that while the vessel was on the quarantine grounds, and on the west, or Staten Island side of the channel, and within the county of Richmond, and about two o'clock in the afternoon of the 10th of April, 1858, he went on board of the Seneca, with the attachment of Theodor Schmidt, above-mentioned, and served the same on the captain, and by virtue thereof demanded the hides and goat-skins, and that the captain should anchor his vessel till they could be taken out. The goods were at this time in the hold of the vessel mingled with others of the same description, and the hatches were closed. To have then delivered the property in question, would have involved substantially the unloading of the whole cargo.

. The captain replied to the demands of the deputy sheriff that he had had a very long passage and was very anxious to get up to the city.

Taacks *a.* Schmidt.

Thereupon, after some conversation the captain executed and delivered to the sheriff an instrument entitled in the attachment suit of Schmidt *a.* E. Schroeder & Co., in the following words:

"I hereby become the receiptor to the sheriff of the county of Richmond for, and agree to deliver to his order the goods marked and described below.

1355 dry hides, marked E. S.

47 bales goat-skins, marked E. S. & Co.

Shipped by Schroeder, and consigned to order.

THOS. FENHAGEN."

Upon the execution of this paper, the sheriff allowed the vessel to proceed, he remaining on board, to Brooklyn, where they came to the wharf. The deputy remained aboard of the vessel by day, and slept near it at night, so as to watch the goods. The officer of the customs was also on board and in charge of the vessel and cargo, and locked the hatches every night.

At the end of five days the discharge of the cargo was commenced. When any of the goods bearing the marks in question came out, the deputy sheriff caused them to be piled on the dock separate from the rest of the cargo. The hides and skins were all subject to pay duties to the United States Government, and remained under the control of the custom-house authorities for the enforcement of the payment of such duties. Trovert, Schroeder & Co., the consignees, entered the goods in the custom-house in bond, and paid the freight on them, to the owners or agents of the Seneca. After the unlading and assorting of the cargo, the hides and skins in question were removed in lighters by the custom-house authorities to the United States Bonded Warehouses, 238 and 239 South street, New York city. This was done against the wishes and remonstrances of the sheriff of Richmond, whose deputy had up to that time remained on board the Seneca, with his attachment. On the placing of the goods in the warehouses, the deputy of the sheriff of Richmond county continued to watch them at and in the warehouses, for the purpose of taking them whenever they should be released from the claims of the government of the United States for

duties, and be brought outside the warehouses. The goods remained in the warehouses till the 5th day of June, 1858. Prior to that date Trovet, Schroeder & Co. had paid the duties and obtained the custom-house order for the hides.

About the 25th of May, 1858, Taacks negotiated sales, through brokers, of the hides; a part to Smull & Sons and a part to Korm & Baare. The forty-seven bales of goat-skins had been released from the attachment of Theodor Schmidt by his attorneys, for the reason that the hides were of sufficient value to pay or secure the amount of his claim.

On the 4th of June the present action was instituted. An injunction was obtained to restrain the defendants from taking, carrying away, or interfering in any manner with the hides. On the 5th of June the plaintiff went to the bonded warehouse, and by means of the injunction-order which was then served on the sheriff of Richmond county, who was thereby prevented from interfering with the property, as it was delivered from the warehouses, took possession of the hides, and has since retained them or their proceeds in his possession. He thereupon consummated his sales previously made of the hides to Smull & Sons and Korm & Baare; he received for the hides the notes of the purchasers, and transferred those notes to Trovet, Schroeder & Co., in payment of his own purchase of the hides from them; receiving back a balance of about $190 from the proceeds of the notes. Taacks became aware of the claim of the sheriff of Richmond to the hides, under the attachment issued to him, shortly after the arrival of the Seneca at her wharf.

On the 10th of April, 1858, the hides were worth 25 cents per pound on a cash sale; and they remained of that value till after the 5th of June, 1858. They weighed 26,372 pounds, and were of the value of $6,593.

The first question which I shall consider is, whether the sheriff of Richmond county made a sufficient levy under his attachment. If not, neither he nor the plaintiff in that attachment can have sustained any damage, and all further inquiry is useless. If the levy was sufficient, it will then be necessary to inquire whether any prior or better rights existed, which cut off his claim.

The stipulation of the parties admits that the sheriff went on

Taacks *a.* Schmidt.

board the Seneca and served the attachment on the captain, and that as the sheriff was about ordering the vessel anchored, the captain became the receiptor for the property sought to be seized, by the written instrument above set forth, in and by which he agreed to deliver the property to the order of the sheriff. The testimony of the deputy sheriff shows that he went on board, served the attachment on the captain, obtained the manifest of the cargo, pointed out the entry thereon of the goods which he claimed under his attachment, by their marks and numbers, and required the vessel to be anchored. This was of course for the purpose of taking manual possession of the merchandise. To avoid the delay and the expense of overhauling the cargo, and taking out the goods specified, the captain gave the receipt and agreement above set forth. True, the hatches were not opened, nor were the goods then actually exposed to the view of the sheriff. But the officer had assumed dominion over the property, having it at the time within his power, and subject to immediate seizure. Within the cases, it would seem that this was sufficient. (Price *a.* Shipps, 16 *Barb.*, 588, and cases cited.)

But this was not all. The officer remained on board the vessel. He watched the goods on board of her day and night, till they were taken on the 5th of June by virtue of the injunction in this case. It is true that during all that time he was prevented from asserting and exercising supreme and exclusive control over the goods, by the acts of the revenue officers, who took possession of them to enforce the payment of the duties due to the United States.

It is insisted on the part of the plaintiff, that for this reason, the acts of the sheriff are wholly void. That as the goods were in the legal custody of the United States authorities, they could not be attached or levied upon by process from a state court. That it was clearly impossible for the sheriff to exercise such control over them as to amount to a levy.

This proposition is so wide and sweeping that it scarcely requires examination.

It is true that the custody of the government over goods held for duties is, and from its nature must be, exclusive. Still it is but a lien upon them. It is not a property in them. It is only means of enforcing the payment of the charges which are but

a portion of their value. The property of, and in the goods, still remains in the owner. They are still *his* in every sense of the word. He may sell them, pledge them, mortgage them. They pass to his executor, or administrator, or legatee, on his death. To say that his interest is capable of any voluntary transfer or disposition, and even of a legal one, but is beyond the reach of creditors, because the sheriff, who would seize the goods must hold them subject to a prior lien, would be monstrous. The revenue laws themselves say nothing of the kind. There is no adjudication of the sort. And it is, I have always understood, the common custom to make such levies; the officer of the State authorities only taking subject to the paramount power and custody of the Federal Government, till the lien of the latter is satisfied, and until the interest of the owner, which was, before, a sort of equity of redemption, has become an absolute and complete property in the goods.

It is undoubtedly true that if the officer, acting under State authority, attempts to assert a title which shall be hostile and superior to the custody and lien of the Federal power; if he shall claim to take and hold the merchandise against the claim of the government for duties, or even against its claim for other debts, the process for which is levied upon the goods while they are held by the officers of the government for duties, as was done in Harris *a.* Dennie (3 *Peters*, 292),—the acts and the claims of the State officer will be void as against the national authority. But it is equally true that when the sheriff or other State officer has first obtained possession of property under his process, the Federal tribunals are equally incapable of seizing and holding it, in hostility to the prior levy. (Taylor *a.* Carryl, 20 *How. U. S. R.*, 583.)

It is, indeed, a general rule that property in the custody of the law cannot be taken out of such custody by the process of law, provided when seized by the officer they were found in the possession of the defendant in the execution. (Hall *a.* Tuttle, 2 *Wend.*, 478.) This case itself recognizes the existence of exceptions to the general rule.

But I know of no authority and no principle which will hold the chattels of any man discharged from all his other debts, because they are in the custody of an officer of the law, for the enforcement of one particular debt; whatever be the nature of

Taacks *a.* Schmidt.

the debt, or the character or function of the officer, or it may be added whether the seizure be made by the procurement, or consent, or sufferance of the debtor, or even against his most active and determined opposition. [a]

The same considerations dispose of the objections that the captain of the Seneca had a lien on the hides for freight, and the consignees a lien for their commissions. It is needless to inquire whether consignees who are merely the agents of a foreign owner for the purpose of selling the goods on his account, have a lien on them before receiving them. For the captain certainly had a lien. But how many soever were the liens, there was still an interest in the owner, which was subject to levy and sale, in payment of the claims of other creditors. And, in this case, the sheriff of Richmond was justified in seizing or attempting to seize this merchandise, subject to all the prior liens thereon.

But the plaintiff insists that by his own purchase of these hides on the morning of the 10th of April, 1858, the title of the foreign owners, the debtors in the attachment held by the sheriff of Richmond, had been divested, and E. Schroeder & Co. had no leviable interests in the goods. The effect of this purchase, therefore, next demands attention.

That the sale and purchase took place some hours before the Seneca reached the quarantine grounds, and was there boarded by Hoglam, the sheriff's deputy, is proved beyond question. There was no transfer, sale, or purchase of the bill of lading, though the complaint on which the injunction herein was granted, avers that the plaintiff " purchased the bill of lading." There was a simple contract of sale and purchase evidenced by the usual bought and sold notes signed by the broker. It became, thereby, a valid and legal contract under the Statute of Frauds, capable of enforcement by either party. But there was no delivery of the goods, for they were still at sea. As the thing purchased was then incapable of delivery, the purchaser did not deliver in payment thereof his money or his notes. Had he done so there would have been room for suspecting the good faith of the whole transaction. But he bound himself to receive the goods and to pay for them when delivered, as the consignees bound themselves to deliver the goods to him within a reasonable time after their arrival upon his paying for them.

But though the minds of the parties had met as to the fact and the terms of the sale; and though the written evidence required by the statute had been drawn up and signed, there was still no advance of money by Taacks, and no giving of any note or other obligation by him, on the faith of his purchase.

The proof is clear that very soon after his purchase, he became aware of the claim of the sheriff of Richmond under the attachment of Schmidt. At the end of nearly two months from his purchase, he brought this suit, obtained the injunction granted therein, by means of it ousted the sheriff from his partial custody of the goods, and having thus obtained them, he sold them over again; received the notes of his own vendees, and transferred them over to his vendors, in payment of his original purchase, receiving some $200 for his profit. Up to this time he had never seen or handled the goods, or advanced or become liable for a dollar in respect of them, except in this suit. And by means of the suit, utterly and confessedly groundless as it was, he deprived one creditor of those who owned the property, of its value, and threw that amount into the hands of other creditors.

And it is worthy of remark that the creditors thus kindly treated by this purchaser, Taacks, are equally kind in return. For the firm of A. Trovet & Sons, through Mr. Herman Schroeder, their partner in the house of Trovet, Schoeder & Co., the consignees of the hides, have conducted this suit; have furnished the affidavits for procuring the injunction, and have paid all the expenses of the plaintiff, including the charges of his attorneys and counsel. Doubtless they furnished the security upon which the injunction was issued. For the plaintiff is not a party to the undertaking for the injunction.

I feel little hesitation in holding that a purchase thus consummated, is not a purchase in good faith and for value, as against the creditors thus supplanted and wronged, however just and fair the bargain was in its inception.

It does not come within the language or the spirit of section 3 of the act relative to Principals and Factors. (*Laws of* 1830, 203, ch. 179; see *Ib.*, in Rev. Stat., Part 2, ch. 4, tit. 5, vol. 2, p. 185, 4 ed.) That statute provides (omitting the provisions not relevant to this case) that every factor, &c., intrusted with the possession of any bill of lading of any mer-

chandise, &c., "shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, *for any money advanced or negotiable instrument or other obligation given, by such other person upon the faith thereof.*"

It needs no labor to show that here was no sale of these hides "for money advanced, or obligation given upon the faith thereof." And it is too well settled to admit of doubt, that Taacks could not claim to be a purchaser in good faith, without notice of the claim of the sheriff of Richmond, unless he not only obtained the legal title to the hides, but also paid the purchase-money or some part of it, or parted with something of value on the faith of the purchase, before he had notice of the claim of the sheriff. (De Mott *a.* Starkey, 3 *Barb. Ch.,* 403.)

But the plaintiff insists that the sheriff of Richmond could not make a valid levy on the hides on the 10th of April, for the reason that the property in the hides had been, previously, duly attached, under and by virtue of the two attachments issued to the sheriff of New York. And the effect of the levy of those next demands attention.

The question is quite new as far as my knowledge extends, or as counsel have enlightened me. It is to be determined upon the terms of the statute relative to attachments and upon principle.

The facts are simple. The goods are owned by a non-resident. He ships them to his agent here, to be sold on account. On putting them on ship-board he received from the master a bill of lading for the goods. He sends this bill of lading with the invoices, by mail, and the same reach the hands of the agent before the vessel arrives with the goods.

In the interval between the arrival of the bill of lading and of the merchandise, the sheriff attempts to acquire a lien upon, or a special property in the chattels, by levying his attachment on the bill of lading which represents them. The goods themselves are not within his jurisdiction. There is not, and cannot be any purchase or assignment of the bill of lading. Nor can the sheriff be protected under the factor's act. For he makes no advance of any money or thing of value upon the faith ·

the goods. He only claims to take them, to apply in payment of a precedent debt.

What then is the bill of lading in such a case? Doubtless, in some sense it is a representative of the goods themselves. For a *bona-fide* purchaser of the bill, or of the goods from the consignee is protected. But is the bill of lading when the goods are owned, and while they still remain out of the State, and when there is no claim of *bona-fide* purchasers involved, any thing more than a mere contract between the foreign owner and the master of the vessel for the transportation of the property hi·her? If by the terms of it, or by an indorsement of it when taken to the shipper's order, the goods are made deliverable to the agent of the owner here; what is it then, in respect of the agent but an order to deliver the merchandise, and a power of attorney to the agent to take possession of the same on the happening of a future event, viz., the arrival of the ship with the goods on board?

And, can it be, that the mere presence within the State of a contract in reference to the property of a foreigner, or of a power of attorney over it, while the property itself is beyond our jurisdiction, will enable our courts to acquire a lien on the very property itself?

Would a lien thus obtained prevent the owner from selling the property himself if he chose so to do? Had the vessel been driven by stress of weather into an intermediate port, with the shipper on board, might he not, subject to the rights of *bona-fide* purchasers from his consignees here, have taken off the hides, and sold them at that place?

If the mere sending of the bill of lading in a case like the present, to a consignee here, would make the merchandise itself liable to seizure upon attachment, would not a similar result follow from sending any other contract, or power, or authority over the goods?

Suppose the foreign owner instead of sending the bill of lading, had made and sent hither a contract with a tanner here, for tanning the hides on their arrival, or had made them, by the bill of lading, deliverable only into the bonded warehouse, and had then given an order on the warehouseman for their delivery, or a general letter of attorney to an agent for their ... , or disposition, or management,—would a levy of an

attachment on such a contract, or order, or warrant of attorney operate as a seizure of the goods? Would it divest the title of the foreign owner, or cut off the rights of the other creditors and of *bona-fide* purchasers, whether from the foreign owner or from the consignee?

So far as I can perceive,. therefore, there is no ground of principle on which the existence of a lien on these goods can be supported, from the mere levy of an attachment on the bill of lading. On the contrary, every principle of reason rather tends to the opposite result. So that if the statute as to attachments in terms gave them such an effect, the validity of such an enactment would be well worthy of consideration. Certainly nothing but clear and express provisions in the law should be permitted to lead to such a result.

To my judgment the statutory provisions instead of being at variance with the views above suggested, are in all respects consistent with them.

By section 232 of the Code, the sheriff to whom a warrant of attachment is directed and delivered, shall proceed thereon in all respects in the manner required of him by law in case of attachments against absent debtors; shall make and return an inventory, and shall keep the property seized by him, or the proceeds of such as shall have been sold to answer any judgment which may be obtained in such action.

The manner in which a sheriff is required by law to proceed in case of attachments against absent debtors, is prescribed in Art. 1, of tit. 1, of ch. 5, of Part 2, of the Rev. Stat. (2 *Rev. Stat.*, 4, § 7, *et seq.*) It is provided in section 7 that he "shall immediately attach all the real estate of such debtor, and all his personal estate, including money and bank notes, except articles exempt from execution; and shall take into his custody all books of account, vouchers, and papers relating to the property, debts, credits, and effects of such debtor, together with all evidences of his title to real estate." By section 8 as now amended, he "shall immediately on making such seizure, with the assistance of two disinterested freeholders, make a just and true inventory of all the property so seized, and of the books, vouchers, and papers taken into his custody; stating therein the estimated value of the several articles of personal property, and enumerating such of them as are perishable." The inven-

tory is to be signed and returned as directed.   The further provisions of this section are nearly the same as the remaining provisions of section 232 of the Code.   For by both statutes the sheriff is to collect and receive into his possession all debts, contracts, and effects of the debtor or defendant, and to bring suit, &c., therefor, as may be necessary.

By section 61 (2 *Rev. Stat.*, 12), the trustees who may be appointed in the proceedings against absent debtors are, within one month after their appointment, to cause their appointment to be recorded in the office of the clerk of every county in which any property shall have been seized under the warrant of attachment against such debtor.

If there be any other provisions of the Revised Statutes which affects this question, it has escaped my notice.

The distinction between the "*attaching*" or "*seizing*" of "*property*," and the "taking," into the custody of the officer, of the books of account, vouchers, and papers relating to the property, debts, credits, and effects of the debtor, is very plain.   In both of the sections quoted above, which prescribe the sheriff's duty, it is made his guide in all his actions under the attachment.   So, that, though it may be the duty of a sheriff under an attachment to take into his custody such a paper as the bill of lading in this case was, because it relates to property and effects of the debtor, and because that property may come within his jurisdiction, and be subsequently liable to seizure as articles of property, still there is nothing in the statute which ·assumes that his act in so doing is intended by law to operate as a seizure of the property to which the voucher or paper may relate.   This view is supported, if it needed support, by the language of section 234 of the Code, which provides that "the rights or shares which such defendant may have in the stock of any association or corporation, together with the interests and profits thereon, and all other property in this State of such defendant, shall be liable to be attached and levied upon, and sold to satisfy the judgment and execution.

But it is insisted on the part of the plaintiff that the certificate given by Trovet, Schroeder & Co., on the 9th of March, to the sheriff of New York, in which they included this bill of lading, and by which they agreed with the sheriff to hold the bill of lading, and the merchandise therein mentioned, or the

proceeds of the sale thereof, subject to the attachment held by the sheriff, and to account to the sheriff for the proceeds thereof, was in effect a transfer of the bill of lading to the sheriff under those attachments, and was equivalent to a delivery to him of the goods.

I am unable to perceive the correctness of this position. The consignee cannot divest his consignor of his interest in the goods by any such transaction as this. His power is that of a mere agent. As such agent he may sell for value advanced by the purchaser. Every other sale is inoperative and void. And the attempt to charge the property by a lien, as was done in this case, must be equally ineffectual. The giving of such a certificate is in no respect essential to the complete levying of an attachment upon the property in the hands or under the control of an agent of the non-resident debtor. That attachment is complete according to section 235 of the Code, by leaving with the party in charge of the property a certified copy of the warrant of attachment, with a notice showing the property levied on. All that can be reached, is held by this act of the sheriff. The agent cannot diminish or invalidate the effect of the levy by withholding the certificate, or enlarge the same by giving it. The certificate is merely an aid for the guidance of the sheriff in following and obtaining the property which he is required to seize.

The same remark applies to the criticism of the plaintiff's counsel upon the form of the receipt given by Captain Fenhagen to the sheriff of Richmond, when the vessel was boarded, and the attachment served, as before stated. No particular form of certificate was necessary. That paper was doubtless designed, not as a certificate under section 236 of the Code, but as the usual recipt taken by the sheriff from the receiptor, to whom he delivered property seized by him under legal process.

I am, therefore, constrained to conclude that the seizure made by the sheriff of Richmond county under the attachment issued to him was sufficient, under the circumstances, to create a lien upon, or a special property in the hides under the attachment, by virtue of which he proceeded; and that neither the alleged sale to Taacks, nor the prior service of the attachment issued to the sheriff of New York upon the bill of lading was

sufficient to prevent the acquiring of such a lien upon the property by the sheriff of Richmond county.

The only question which remains, then, is as to the amount of the damages which have resulted to the sheriff of Richmond and the plaintiff in the attachment held by him, by reason of the injunction issued in this case, by virtue of which it is admitted that they were deprived of the property in question.

It is insisted that as Schmidt, the plaintiff in that attachment, was not then, and is not now, shown to be a creditor by judgment, of E. Schroeder & Co., the foreign owners, he cannot contest the sale to the plaintiff, or the levy of the attachment by the sheriff of New York; that he, Schmidt makes a claim, as a creditor, which may be all false, and that such claim, not followed up by a judgment, gives no right or lien against the possession of the consignees under the consignment and bill of lading, or against the sale to the plaintiff, who had the constructive possession as purchaser.

The objection is not without great force, although the cases cited to sustain it, do not warrant the position. (Hall a. Stryker, 29 *Barb.*, 105 ; Mills a. Block, 30 *Ib.*, 549 ; Reubens a. Joel, 3 *Kern.*, 488.) For in the present case the transfers of the property in the hides to Taacks, or to the sheriff of New York, if commenced when the levy was made by the sheriff of Richmond, were certainly not consummated at that time. Still the objection can scarcely justify me in deciding that the defendants are entitled only to nominal damages, as is contended. What has been the result of the suit of Theodor Schmidt against E. Schroeder & Co., in which this attachment was issued, does not appear before me,—whether judgment has been entered therein, or whether it is still in litigation between the parties. If the latter, the present case stands now as it must have done had this injunction been dissolved directly after it was granted, and before the time for the publication of the summons against the foreign defendant had expired.

The failure up to that time to obtain judgment in the attachment-suit, could not operate to deprive the plaintiff in such suit of all his security. In a case like the present, had there been a result unfavorable to the plaintiff in that suit, it is reasonable to suppose the plaintiff in this action would have

known the facts, and would have furnished proof of it on this hearing.

I must, therefore, assume that the case is still pending, and may result in a judgment in favor of Schmidt, at the proper time. If it shall, the amount of damages which he will have sustained by the injunction, will be the same which was due to him at the commencement of his suit, together with the interest thereon, and the fees, charges, and expenses of the sheriff which have been paid by him in the action, and the expenses for the legal proceedings which have grown out of the issuing of the injunction.

And in that event the sheriff of Richmond will be entitled to his fees, poundage, and expenses.

If, however, judgment shall finally be rendered in favor of E. Schroeder & Co., and against Schmidt, it will then appear that the lien of his attachment was invalid, because he had no cause of action against his alleged debtors. And in that event his damages would be merely nominal, and the sheriff of Richmond county must look to him for his fees, poundage, &c., &c.

In reality, therefore, this case is not ripe for decision. The amount of the damages to be awarded to the defendants must depend on a future and contingent event, viz., the decision and judgment in the suit of Schmidt *a.* E. Schroeder & Co.

Under such circumstances it is difficult to see how an absolute report can be made either way. No other course seems open, except to compute the amount of the damages which will have been sustained by the defendants in case Theodore Schmidt shall ultimately recover final judgment against E. Schroeder & Co. in his suit against them, and to direct that on the happening of that event, the damages be assessed at the sum named. But if, in that suit, Schroeder & Co. shall recover final judgment against Theodor Schmidt, then that such damages be, and they are hereby assessed at the sum of six cents.

The plaintiff excepted to this report, insisting that the levy of the attachment was invalid, and that the allowance of damages was improperly made.

*Platt, Gerard & Buckley,* for the plaintiff.

*Fincke & Lapaugh,* for the defendants.—I. The plaintiff failed in this action, and the complaint having been dismissed on the trial, and the court having finally decided that the plaintiff was not entitled to the injunction, this reference was ordered, under section 222 of the Code, to ascertain the damages sustained by the defendants by reason of the injunction, obtained without any grounds authorizing the same.

The proof shows as well by the written admissions as the other evidence, and the referee's report finds, that the property, 1,355 dry hides, was on the 5th day of June, 1858, taken from the defendants by virtue of the injunction obtained and served by the plaintiff herein, and as the value of those hides is stipulated to have been $6,200 on the 10th of April, 1858, on cash sale, that amount, with the interest thereon,—unless the referee finds on all the evidence a greater value—constitutes in respect to that property, the damages sustained by reason of the injunction in this action.

II. The defendant, Lockman, sheriff of Richmond county, was entitled to hold the property, as against the plaintiff, under the attachment levied by him upon it in the action of Theodor Schmidt against E. Schroder & Co.

The receipt of Captain Fenhagen who was in possession of the property at the time, and thereupon became receiptor to the sheriff for the goods attached, is sufficient evidence of the goods having been attached by Lockman the sheriff. The captain then represented and answered for the owners of the goods, and his act in law was the act of the owners.

From that time the sheriff of Richmond county, by himself and his deputies, had the custody and possession of the said property, and so continued to have the same until the 5th of June, 1858, when it was taken from him by the plaintiff under his injunction.

III. The parties, Trovet, Schroeder & Co., from whom Taacks claims that he purchased, never had any possession of the property.

IV. The plaintiff never was the owner of the goods in question, nor did he ever have the possession of the same.

V. The goods in question did not arrive until the morning of the 10th of April, 1858, and were thereupon immediately levied upon by the sheriff of Richmond county within his

jurisdiction, and before the United States ever had, or claimed to have any lien, possession, or custody of the goods, or could have any, and the goods did not reach New York until afterwards, and then only in the actual custody of the sheriff of Richmond county. At the time the goods were attached by the sheriff of Richmond county, they were not in the possession of the United States either actually or constructively. The sheriff of Richmond, at any rate, first obtained possession of the property under his process or attachment. (Taylor *a.* Carryl, 20 *How. U. S. R.,* 583.)

VI. The sheriff of the county of New York did not by his attaching the bills of lading become the holder of the property in question, nor have any right to sell or dispose of the same, but if he attached at all, he was required safely to keep all the property of the defendants within his county, or so much thereof as might be sufficient to satisfy the plaintiff's demands, together with costs and expenses (*Code of Procedure,* § 231), for selling or disposing of the said bills of lading or property.

VII. The sheriff of New York could not, by attaching the bills of lading, hold or dispose of the property in question, which was not in his possession, either as against a prior attaching creditor or any other person having the actual possession thereof.

VIII. The sheriff of New York did not, and could not, by a mere levy upon the said bills of lading become entitled to the property of the consignors, or their interest therein, while the property of the consignors was already in the possession and actually held by the sheriff of Richmond county.

IX. If the sheriff for all attaching-creditors becomes entitled to the property of the consignor and his interest therein, then before the delivery of the property to the consignee, the consignee cannot dispose of the property nor of any interest in it; and, hence, whichever sheriff in this case became so entitled, certainly the consignees, Trovet, Schroeder & Co., did not have any interest or right in the property in question, nor any power or authority as consignees to sell it to Taacks or any body else.

X. In this case there was no transfer, nor was there any endorsement of the said bill of lading, and if there had been, it would not have been equivalent to the actual delivery of the

goods. (Lickbarrow *a.* Mason, 1 *Smith's Lead. Cas.*, 752, 759, 4 Am. ed.) Whatever may be the effect of a transfer of a bill of lading as between the immediate parties, it cannot prejudice the rights of third parties.

XI. The consignees or any one else, even if holding the bills of lading as alleged agents of the sheriff of New York, were not from the 9th day of March, until the 10th day of April, or at any other time, in legal possession, or in any possession of the property in question; and their alleged assignee, the plaintiff, in this action, on that 10th day of April mentioned, did not become, and he is not entitled to the property. "*Nemo plus juris transferre potest quam ipse habet.*"

XII. The *transitus* of the goods was by their seizure under the attachment issued by the sheriff of Richmond county, terminated before the goods in question reached any possession of the consignees or the sheriff of New York.

XIII. The sheriff of Richmond county, having by a valid attachment, and the first one delivered to him, attached the property, any subsequent attachment is subordinate to his levy so made. (2 *Rev. Stat.*, 366; Peck *a.* Tiffany, 2 *N. Y.* (2 *Comst.*), 451. *Prior tempore potior jure.*

XIV. The question of the United States having a right of lien or possession for duties until paid, is not a matter of consideration in this case, since the United States are no party to this proceeding, make no claim for any duties, nor do they claim any lien upon or possession of the goods, nor does any one set up lien, title, or claim under them.

XV. In Patterson *a.* Perry (10 *Abbotts' Pr.*, 82; and in S. C., 5 *Bosw. N. Y. Superior Ct. R.*, 518), it was decided that bills of lading are not property attachable within the meaning of the Code; and that where one attachment is levied upon the bill of lading, and another one upon the goods mentioned in it, the attachment upon the goods, though later in point of time, holds the goods to the exclusion of the one levied upon the bill of lading.

XVI. If the United States interposed or presented any claim, by way of lien for duties or otherwise, to the possession of the property, they should have been made parties to the suit by the plaintiff. But in the absence of their being parties to the same, and, also, in the absence of any claim of any kind

Taacks *a.* Schmidt.

by them, a third party, a stranger to the United States can-
not avail himself of any right or privilege which he supposes
the United States possessed by way of lien for duties at some
time while they might have been unpaid. The property itself
is in no wise changed, in its title or ownership, by the circum-
stance of its being subject to a possible duty or lien in favor
of the United States. Beyond this mere lien where it exists,
the United States has no right; the duties once paid, all claim
of the United States is discharged and ended. If the duties
were not paid, and the property were sought to be withheld or
retained on that account, the burden of proving that such was
the fact would rest upon the party asserting the right so to
withhold or retain the property.

XVII. If there were existing duties in favor of the United
States not paid nor discharged, the sheriff of Richmond county
would be entitled to hold the property, subject only to the lien of
the United States. The case of Harris *a.* Dennie (3 *Peters'*
*U. S. R.*, 292), upon which the plaintiff relies, presents a state
of facts very different from those in the case here under con-
sideration. The counsel for the plaintiff appears to have en-
tirely misapprehended the principle in that case, and the rule
or doctrine therein intended to be declared. There the contest
was between the United States claiming a lien for the payment
of duties on the goods on the one side, and an attaching-creditor
on the other side, endeavoring to get the goods out of the pos-
session of the United States in spite of the lien of the United
States for those duties. Here, instead of our trying to take the
goods out of the possession of the United States, we levied
upon them before they came into the possession of the United
States in any manner or to any extent, and afterwards we con-
tinued to hold possession with the United States so far as to
submit to any lien of the United States for duties, or to any
temporary right of possession which such lien might have
given them until that lien was discharged. And after the lien
was fully discharged, and the United States neither have nor
claim to have any lien or demand upon the goods, we are
sued, because we have the free and unqualified possession and
right of possession of the same. When the lien of the United
States was discharged, or out of the way, the sheriff was en-
titled to the unobstructed possession of the goods. The sense

and point in Harris a. Dennie is that no creditor can by pro-
cess take the goods out of the custody of the United States be-
fore the duties are discharged. This was so held again in Con-
rad a. Pacific Ins. Co. (6 *Peters' U. S. R.*, 262.) Story, J., in
the latter case, referring to Harris a. Dennie, said, " It decided
no more, than that no creditor could, by any attachment or
process, take the goods, upon their importation, out of the pos-
session of the United States, until the lien of the United States
for the duties accruing thereon was actually discharged, either
by the payment of the duties or by giving security therefor,
according to the requirements of law on the part of the im-
porter."

XVIII. This is an equity action, and there is nothing valid
in the exception, that the report contains a clause in reference
to damages, either in the alternative, or as conditional.

XIX. Whether the judgment will be in-an alternative form
or otherwise, cannot possibly be known until it is first entered.
Hence, it is now premature to consider as to that question.
But even if the matter were now a judgment in the alternative
at law, strictly so called, it would be merely an irregularity,
but amendable. (Aldrich a. Thiel, 3 *Code R.*, 91.)

XX. The right of the sheriff and the attaching-creditor to
hold the property by virtue of the attachment is now settled
in their favor by the court. (Rinchey a. Stryker, 26 *How. Pr.*,
75; Thayer a. Willet, 5 *Bosw.*, 344; Kelly a. Breusing, 33
*Barb.*, 123; Hill a. Stryker, also lately decided in the Court of
Appeals, but. not yet reported.) The plaintiff having, by an
action and injunction not maintainable, taken the property in
question from the defendants, and deprived them of the same,
and as this is so found by the report—as well as the other facts
in favor of the defendants—and as there is no dispute or ex-
ception as to the facts found by the referee, the exceptions
by the plaintiff to the report, must be overruled, with
costs.                                          .

James, J.—This was a motion to confirm the report of a
referee, and exceptions to such report.

The defendant, Schmidt, was plaintiff in an action com-
menced against the firm of Schroeder & Co., of Buenos Ayres,
upon which an attachment had been issued to the defendant

Lockman, sheriff of Richmond county, who claimed to have lawfully seized certain hides of Schroeder & Co., subject to the revenue duties.

This action was commenced by plaintiff claiming to be the owner of said hides, to restrain defendants from interfering therewith, in which an injunction was issued to that effect, whereby plaintiff obtained and sold said hides.

On trial, the complaint was dismissed, the injunction dissolved, and a reference ordered to ascertain the damages by reason of such injunction.

The referee reports that said hides were shipped by Schroeder & Co., from Buenos Ayres to their agents in New York, to sell on account; that on February 27, 1858, said agents, having a small sum of money in hand, an attachment was issued against Schroeder & Co., and delivered to the sheriff of New York, who served a notice on the said agents, attaching all funds and property in their hands; that Feburary 22d an attachment in favor of the defendant Schmidt against Schroeder & Co. was also issued and delivered to said sheriff; that on the 9th of March the bills of lading of said hides having arrived the day before said agents gave the sheriff of New York a certificate of the same, and agreed to hold said bills, or said hides to arrive, or the proceeds thereof, subject to said attachments; that March 3d another attachment in favor of said Theodore Schmidt against Schroeder & Co. was issued and delivered to the sheriff of Richmond county; that on the 10th day of April, before noon, said agents sold said hides to arrive, to plaintiff Taacks; that in the afternoon of same day the sheriff of Richmond county seized said hides in his bailwick before they had even been within the county of New York, of course subject to the United States revenue laws; that he accompanied the same to New York, and kept the custody of the same as far as possible, subject to said revenue laws, until forced to surrender his claim by force of said injunction.

As conclusions of law, the referee found that the sheriff of Richmond had a valid levy upon said hides, and a special property therein equivalent to any judgment recovered in the action in which such attachment issued; and if final judgment should be obtained in said action, the amount of said judgment, the legal fees and charges of said sheriff, and the sum paid his

deputies for services and expenses, would be proper damages occasioned by said injunction; and, also, that the costs, fees, expenses, and disbursements in this action were also damages occasioned by said injunction.

The plaintiff interposes five exceptions to this report which I will first consider.

The first three involve the same question; whether or not the sheriff of Richmond had a valid levy upon the hides by virtue of the attachment:

The plaintiff insists the hides could not be attached by the sheriff of Richmond:

1st. Because they had been previously attached by the sheriff of New York, and were consequently in the custody of the law.

2d. Because they were plaintiff's property.

3d. Because the hides were in the legal custody of the United States for duties.

These points were satisfactorily answered by the referee in his opinion, and it will not be necessary for me to go over the same ground. I fully concur in his conclusions and in most of his reasoning.

The *fourth* exception is to the allowance for damages.

The referee allows as follows:

1st. The amount and interest of any judgment which may be recovered under the attachment.

2d. The legal fees and charges of said sheriff of Richmond county upon the amount for which such judgment shall be recovered.

3d. The sum of $336 for services and expenses of deputies in seizing and watching said hides.

4th. The sum of $50 for referee's fees on first hearing.

5th. The sum of $500 for the costs, fees, and disbursements of the attorney and counsel of defendant Schmidt in this action.

6th. The sum of $500 for the costs, fees, and disbursements of the defendant Lockman in this action; and

7th. The sum of $200 for the costs and expenses of the hearing before said referee.

I infer from the papers that no final judgment has been as yet entered in this case; that upon dismissing the complaint

this referee was ordered under section 222 of the Code. to ascertain what damages had been sustained by reason of the injunction, and that no judgment will be entered herein until the coming in and confirmation of the referee's report.

In ascertaining the damages, the referee had nothing to do with the question of fees, costs, disbursements, or allowances, either in this action or the action under the attachment.

The final judgments recovered in these actions are proper damages; but the fees, costs, and disbursements must be fixed and adjusted in each case as required by statute Code, §§ 243, 307, 308, 309, 311, 312 (2 *Rev. Stat.*, 646).

The adjustment must in all cases be performed in part by the officer who issued the attachment (2 *Rev. Stat.*, 646; *Code*, 243); the part being fixed by law must be adjusted by the clerk, and all extra allowances by the court.

It is a power that cannot be delegated to a referee, even under the cover of fixing damages sustained by an injunction.

Some of this extra labor under the attachment allowed by the referee was occasioned by the injunction.

If the plaintiff succeeded in the action in which the attachment issued, the injunction has probably deprived Schmidt of the means of satisfying such judgment out of the property of Schroeder & Co.; and, therefore, the plaintiff in the injunction-suit, and his sureties should be held to make Schmidt good; should pay his judgment. So in the injunction-suit the plaintiff and sureties are liable for the judgment as damages; but the costs and disbursements which the law allows, and such extra compensation as the court may think proper and right under the circumstances, are to be carried into and form part of that judgment; and such costs should include the costs and expenses of the reference under the order to ascertain the damages. It may be otherwise when other damages than costs which are not to go into a judgment are sought.

In this case all which the defendants can legally claim as damages, by reason of the injunction, is the judgment herein; the costs and expenses of the referee, if not included in said judgment; and the judgment, if one shall be recovered by the plaintiff, in the action in which the attachment issued.

I confess there seems an inconsistency in proceeding to an assessment of damages before the damages can be known, and

Taacks *a.* Schmidt.

the true course in this case would have been to have waited until the final determination of the attachment-suit. Still the party ought not to be deprived of what may prove a just claim, through haste of procedure, if his rights can be preserved in pursuance of law and without injustice to his opponent. I think that may be done in this case by suspending the confirmation of the referee's report until the final determination of the action in which the attachment was issued.

The *fifth* exception was to the amount found as the value of the hides. It is agreed that there was an error, and that their value was $6,200, on the 4th day of June, 1858.

All of the exceptions to the report but the fourth and fifth are disallowed. The fifth is allowed, and the fourth is modified so as to fix the damages at the amount of any judgment which shall be finally determined for the defendants in this action, and the costs and expenses of the reference to ascertain the damages occasioned by the injunction, if the same shall not be included in the said judgment; and also any judgment which Theodor Schmidt may finally recover in the action against Schroeder & Co., in which the attachment was issued directed to the sheriff of Richmond county.

That the confirmation of said report so altered and modified be suspended until the further order of the court, with leave to defendants to move on the usual notice, and on affidavit showing the action in which the said attachment issued determined, or a stipulation that defendants herein abandon all claim for damages in that action, by reason of the injunction issued in this.

Let an order be entered in conformity with this opinion.

Subsequently judgment was given in the case of Schmidt *a.* Schroeder & Co. in favor of the plaintiff, and the plaintiffs moved to insert the amount of the judgment in the judgment against Taacks in the injunction-suit. The plaintiff, Taacks, objected to two items taxed in the judgment against Schroeder.

BARNARD, J.—An order of reference was made in this action to ascertain and report the damages sustained by the defendants, by reason of an injunction issued therein. The referee made his report, and the plaintiff filed exceptions to it. The

Taacks *a.* Schmidt.

motion to confirm the report came on before Judge James, and the exceptions were argued before him; he made an order whereby the report was so far modified as to fix the damages in this action at the amount of any judgment which should be finally determined for the defendants in this action and the costs and expenses of the reference to ascertain the damages occasioned by the injunction therein, if the same should not be included in the costs of such judgment, and of any judgment which Theodor Schmidt might recover in a certain action against E. Schroeder & Co. In other respects the report was confirmed, and the confirmation of the report so modified was suspended until the further order of the court, with leave to the defendants to move, on the usual notice and an affidavit showing the determination of said action of Schmidt *a.* Schroeder & Co.

The defendants now, on an affidavit that the case of Schmidt *a.* Schroeder & Co. is determined, move for a full confirmation of the said report as modified, and claim as part of their damages the amount of the judgment in the case of Schmidt *a.* Schoeder & Co. The plaintiff objects to the allowance of two of the items of costs contained in that judgment, to wit, the item of $848 allowed to the sheriff for his services on an attachment in that action, and $250 allowed to the plaintiff as an extra allowance in that action.

The order of Judge James disposes of the plaintiff's objection. That order cannot be reviewed in this proceeding before me, either directly or indirectly. If erroneous, it must be corrected on appeal. If its language were ambiguous, then the proper construction to be given to it would necessarily arise on this motion. But it is not ambiguous. In clear direct terms, it fixes the amount of any judgment to be recovered in this action of Schmidt *a.* Schroeder & Co. as one of the items of damages.

I am also of opinion that the provisions of the Code authorize an allowance in this case, and that the case is a proper one to order an allowance in.

An allowance of $300 is given to the defendant Schmidt, and a like allowance to the sheriff.

The defendant's attorney will present an order drawn in conformity with this opinion.